UNITED STATES v. ROBBINS. See Case No. 16,171.

## Case No. 16,176.

### UNITED STATES v. ROBINSON.

[4 Mason, 307.] [1]

Circuit Court, D. Rhode Island. Nov. Term, 1826.

[1] [Reported by William P. Mason, Esq.]

## Case No. 16,177.

### UNITED STATES v. ROBINSON et al.

[1 Sawy. 219.] [1]

Circuit Court. D. California. July 8, 1870. [2]

SALE—USAGE PROVED—BREACH OF ENTIRE CONTRACT.

1. A usage in the grain trade in California to deliver barley in sacks may be shown, when nothing is said in the contract as to the mode of delivery.

[Cited in Balfour v. Wilkins, Case No. 807.]

2. Where a vendor of grain, bound by the contract to deliver from time to time upon requisitions made by the purchaser, refuses to deliver upon requisitions made in pursuance of the contract, and notifies the purchaser that he regards the contract as rescinded, and that he will deliver no more grain under it, the purchaser may treat the contract as wholly broken, and sue for, and recover, the damages upon the entire contract, without making further requisitions.

Action for breach of contract to deliver barley.

The defendants agreed to deliver upon the requisitions of the United States quartermaster, at certain military posts in the vicinity of San Francisco, at such times within the year, and in such quantities as required for the use of such posts, not exceeding in the aggregate one million pounds. The contract did not specify the mode of delivery, whether in sacks, in bulk, or otherwise. It was stipulated that the United States should pay a specified sum per pound in gold coin; and on failure to deliver in accordance with the requisitions made under the contract, that the quartermaster might purchase the required amount in open market, and charge the defendants the difference between the contract price and the price so paid. The requisitions were made and duly filled from time to time for a period of six months, the delivery being always made in sacks. Afterward another requisition of thirty thousand pounds of barley was made, to be delivered at the presidio on the tenth of January following. The defendants brought the barley to the wharf, some six hundred yards from the presidio, in sacks, emptied it into wagons, hauled it to the presidio and tendered it in bulk. The post quartermaster, having no facilities for storing in bulk, declined to receive it in that form, and insisted that under the general usage of the trade in California, he was entitled to have it delivered in sacks. Defendants declined to deliver in sacks, and hauled the barley away. They then addressed the quartermaster a note, stating that they regarded the contract as rescinded, and that they would deliver no more barley under it. The quartermaster notified the defendants, in writing, that he should hold them to the contract, and that if they did not furnish the barley, he would purchase in open market and

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]
[2] [Affirmed in 13 Wall. (80 U. S.) 363.]

charge them with the increased cost. Defendants neither delivered, nor tendered any more barley; and the quartermaster, thereupon, from time to time purchased in open market, at a considerably higher price than that stipulated in the contract, barley having, before the requisition to be filled on the tenth of January, risen largely in price. On the trial the defendants objected to any proof of a usage to deliver in sacks, nothing having been said in the contract as to the mode of delivery. They also insisted, that no recovery could be had except for the requisitions actually made; that notwithstanding their notice that they would deliver no more barley, the quartermaster was bound to make requisitions from time to time, as the barley was wanted, and that plaintiff could only recover for the requisitions so actually made.

L. D. Latimer, U. S. Dist. Atty.
J. B. Felton, for defendants.

SAWYER, Circuit Judge. The first question in this case is, whether it is competent to show a usage in the grain trade in California to deliver grain in sacks, nothing being said in the contract as to whether it is to be delivered in bulk or in sacks. I am satisfied from the authorities, that the testimony is admissible. The cases cited in the note to Wigglesworth v. Dallison, 1 Smith, Lead. Cas. Eq. (5th Am. Ed.) 305, clearly establish this rule. In a case there cited, Baron Parke says: "It has long been settled that in commercial transactions extrinsic evidence of custom and usage is admissible to annex incidents to written contracts, on matters with respect to which they are silent. The same rule has been applied to contracts in other transactions of life in which known usages have been established and prevailed, and this has been done on the principle of presumption, that, in such transactions, the parties did not mean to express in writing the whole of the contract by which they intended to be bound, but to contract with reference to these known usages." So another learned judge cited, in the notes at page 308, Id., says: In all contracts "as to the subject matter of which known usages prevail, parties are found to proceed with the tacit assumption of those usages; they commonly reduce into writing the special particulars of their contract, but omit to specify those known usages which are included, however, as, of course, by mutual understanding. The contract is in truth partly expressed in writing, partly implied and unwritten." So at page 309, note a, Id., the learned editors of the American Notes well state the rule thus: "In like manner, where there has been an express contract about a matter concerning which there is an established custom, this custom is reasonably to be understood as forming a part of the contract, and may be referred to to show the intention of the parties in those particulars which are not expressed in the contract. And it is obvious that the reason of the rule which forbids the receipt of parol evidence of the intention of the parties for the purpose of adding to a written contract, has no application to the evidence of custom." In one case (Smith v. Wilson, 3 Barn. & Adol. 728) the court went so far as to permit the custom of a particular place to be shown—that 1,000 rabbits meant 1,200 rabbits. But it is not necessary to go to that extent here; for in that case, there would seem to be a custom shown contrary to the express terms of the contract. In this case there is nothing in the contract in terms inconsistent with the usage shown. The most that can be said is, that the testimony annexes an incident to the contract in a matter respecting which the contract itself is silent. It merely discloses the circumstances surrounding, and the well known incidents connected with, the subject matter, at the time of entering into the contract, and in view of which it is to be presumed the contract was made. See other authorities cited in note to Wigglesworth v. Dallison; also, Macy v. Whaling Ins. Co., 9 Metc. [Mass.] 363. I think the evidence of usage to deliver in sacks, when not otherwise expressly provided in the contract, admissible, and being admitted, the usage was clearly established, there being no contradictory evidence. The general usage being established, the defendants must be presumed to have been cognizant of it, and to have contracted with reference to it. But I think, also, that the evidence and acts of the parties justify the inference that the contractors well understood the usage. They at least, in fact, voluntarily conformed to it during the first half of the year over which the contract extended. I also think, that the refusal to deliver in sacks, and the subsequent notice to Major Hoyt, United States army quartermaster, that they would deliver no more barley under the contract, but should regard the contract as rescinded, a breach of the entire contract at that time, and that nothing more was required to be done on the part of the plaintiff after the continued failure to deliver the barley referred to, in January, to entitle the United States to recover, than was done in the matter by Major Hoyt. Hale v. Trout, 35 Cal. 230, and cases there cited. This case is sought to be distinguished from Hale v. Trout, because, in that case, the amount of lumber to be delivered was fixed, while here the defendants, Robinson & Co., might not be called upon to deliver the whole million pounds of barley; and it is claimed that it was necessary to make the requisitions from time to time in order to fix the amount. But this, I apprehend, does not affect the principle. The defendants had notified plaintiff that they "decline to furnish any more barley to the government under the contract," and they never did deliver the barley mentioned in the January requisitions. It would be a vain

thing after this to continue to make requisitions. They were to furnish all required for certain posts, not exceeding a specified amount. They had already declined to furnish any more under the contract, and had been notified that they would be held to the contract, and that the necessary amount of barley, etc., would be purchased in open market and the difference in cost charged to them. They did not afterward notify the agents of the government of any intention to recede from the determination not to furnish more barley. I think there was a total breach of the contract. See, also, Withers v. Reynolds, 2 Barn. & Adol. 882; Franklin v. Miller, 4 Adol. & E. 599.

The plaintiff, in my opinion, is entitled to judgment for $4,048.16 in gold coin.

This judgment was affirmed by the supreme court at the December term, 1871. 13 Wall. [80 U. S.] 363.